[Civ. No. 19488. First Dist., Div. Two. Nov. 22, 1961.]

ANSHEN AND ALLEN et al., Plaintiffs and Respondents, v. MARIN LAND COMPANY, Defendant and Appellant.

Orlando J. Bowman and Edmund L. Regalia for Defendant and Appellant.

Charles M. Stark and Paul W. McComish for Plaintiffs and Respondents.

SHOEMAKER, J.—This is an appeal by defendant Marin Land Co., a corporation, from a judgment in favor of plaintiffs Anshen & Allen, S. Robert Anshen and Wm. Stephen Allen (hereinafter referred to as "Anshen & Allen"). Plaintiffs brought this action to recover an amount alleged due them under a contract whereby plaintiffs performed certain architectural services for defendant; joined with the contract count were several cast in the form of the common count.

The facts reveal that defendant corporation proposed to construct a private club, to be known as the Harbor Point Beach Club, on land it owned at Strawberry Point in Marin County. In order to carry out this project, defendant requested 12 architects, including the plaintiffs, to serve on a panel of architects for the development. On June 27, 1956, defendant wrote to the panel of architects, informing them that one of their number would be selected to plan the architectural work for the club facilities, and that the construction of the club was to be accomplished in two phases—Phase I, consisting of a pool, a structure to house the pool machinery, snack bar, toilets, a very minimum dock arrangement, and a pitch-and-putt golf course; Phase II embodied the completion of all landscaping, enlarged dock facilities, a complete clubhouse, and other necessary buildings. The estimate for Phase I was approximately $60,000-$70,000 and as to Phase II, $100,000 plus. Architects' fees were not to exceed 8 per cent of construction costs. It was the defendant's intent to construct Phase I immediately with funds then in hand, whereas Phase II was to be constructed at a later date when defendant was able to obtain financing from outside sources.

Plaintiffs were thereafter selected to draw the plans for the beach club and were authorized by defendant's letter of August 21, 1956, "to proceed on the Harbor Point Beach Club work in accordance with our letter of June 27, 1956, with architectural fee of 8%. . . . Authorization for Phase

Two will be given as soon as finances are available, which was discussed with you at our recent conference.'' Payment was to be made in accordance with procedures contained within The American Institute of Architects Form B102. This form contains the provision that the architect shall receive a payment of 25 per cent of the basic rate upon completion of the preliminary studies.

After the parties had entered into the contract above described, plaintiffs submitted various proposed plans for defendant's approval. During a series of conferences between the parties, various items were switched back and forth between Phase I and Phase II, and by July 17, 1957, the final preliminary plans were completed and defendant had authorized an expenditure of approximately $420,000 for the construction costs of the total project.

The basic dispute out of which this suit arises is over the amount plaintiffs were to be paid for the work done by them. No contention is made that plaintiffs did not complete the preliminary sketches for the construction of Phase I. It is defendant's position, however, that plaintiffs' fee was to be a percentage of the construction costs of Phase I alone, whereas plaintiffs contend that they were entitled to a designated percentage of the construction costs of both phases of the project. The facts reveal that the various plans which plaintiffs submitted from time to time for defendant's approval contained basic site planning as to both phases of the project. Although plaintiffs were aware from the outset that outside financing was necessary in order for defendant to proceed with the actual construction of Phase II, plaintiffs were of the opinion that both phases of the project had to be explored in order that the overall layout could be designed. Such a procedure was in accordance with good architectural practice and was necessary in order that any one phase of the project could later be developed in greater detail. Defendant corporation never at any time objected to the fact that the plans submitted by plaintiffs covered both phases of the project. At the conclusion of the designing process, plaintiffs had completed preliminary sketches which thoroughly covered both phases of the project. Upon completion of these preliminary sketches, plaintiffs contend they were entitled to 2 per cent of the total construction costs pursuant to their written contract with defendant. Plaintiffs elected to bill defendant, however, for only 1 per cent of the construction cost of Phase II (plus the full 2% as to Phase I) since plain-

tiffs knew that Phase II was not to be constructed immediately and also knew that additional changes might be made in this phase before the actual construction took place. Plaintiffs testified that they charged only 1 per cent as to Phase II out of "goodness of our heart" and also because they were conservative in their billings. Defendant refused to pay plaintiffs more than 2 per cent of the construction cost of Phase I, and plaintiffs brought this suit to recover the additional sum allegedly due them.

At the conclusion of the trial, the lower court found that plaintiffs had been employed by defendant on August 21, 1956, to perform architectural services in connection with the construction of the Harbor Point Beach Club. Plaintiffs were to be paid 2 per cent of the construction costs on completion of the preliminary sketches pursuant to their written contract. Plaintiffs performed all the work done by them at the request of and with the knowledge of defendant and in accordance with their contract. The total amount of 2 per cent of the construction costs of the entire project ($8,395.06) was due and owing plaintiffs, but they waived payment as to $1,524.23. After adjustments were made for the amounts defendant had already paid to plaintiffs, judgment was entered for plaintiffs in the amount of $4,370.83 plus costs.

Appellant first contends that the contract upon which both parties rely is embodied in its letter of August 21, 1956, and that this letter authorized respondents to commence work on the plans for Phase I alone and therefore limited respondents' fee to a 2 per cent fee on the construction costs of Phase I alone. The contract expressly states that "Authorization for Phase Two will be given as soon as finances are available . . ." The contract further provides (by incorporating the provisions of The American Institute of Architects Form B102) that respondents will be entitled, upon completion of the preliminary studies, to 25 per cent of the basic rate computed upon a reasonable estimated cost. The record supports the conclusion that both parties contemplated at the time the contract was formed that respondents would be able to complete detailed preliminary studies on Phase I with only a minimum amount of master planning as to Phase II. Respondents were accordingly to be paid for the final product to be produced by them—detailed preliminary plans for Phase I only.

The question posed on this appeal is whether the progressive alterations in the project worked changes in the

contractual relations of the parties. Respondents point out that at the time the contract of August 21, 1956, was formed appellant estimated that the construction cost of Phase I would not exceed $70,000 and that Phase II would cost somewhat above $100,000, as set forth in the letter of June 27, 1956. Yet in July of 1957, appellant had authorized an expenditure in excess of $400,000 on the project as a whole. Respondents point out that other aspects of the project were similarly altered in that various items were switched back and forth between Phase I and Phase II of the project. Although these alterations tend to emphasize the changing nature of any architectural project, they would seem to bear little relation to the parties' contract and the manner there set forth in which respondents' fees were to be paid.

Respondent Allen testified that it is necessary to have an idea of the entire project before planning a part of it. Respondent Anshen testified that all the work done by respondents on Phase II was necessary in order to complete the preliminary studies on Phase I. Under these circumstances, it would not seem surprising that appellant chose to rely on the written contract and felt no need to object merely because respondents were completing the plans for Phase I in a manner consistent with good architectural practice. Furthermore, respondents neglect to mention that appellant wrote to their bookkeeper on January 25, 1957, reemphasizing the terms under which respondents' services were to be performed. In this letter, appellant stated: "On August 21st we authorized your firm to proceed with the work on phase #1 of Harbor Point Beach Club . . . We had a very frank discussion of finances at the beginning of our contract on August 13, 1956 with Mr. Anshen & Mr. Allen and when we have the preliminary plans and sketches we will be able, as we discussed, to get financing ample to pay *your first phase of work as per our contract* and to start some construction." (Italics added.) Upon receipt of this letter, respondents made no objection to appellant's limitation of their fee to Phase I, but merely continued their work on the plans. Respondents admit that they never received written authorization from appellant to do any work other than that set forth in the contract of August 21, 1956. Indeed, respondent Anshen himself testified that respondents at no time even discussed with appellant their intention to base their fee on the total project rather than on Phase I alone, although respondents had known

from the outset that finances made it necessary that the project be accomplished in two phases.

We are of the opinion that the judgment of the lower court must be modified. The rule is well established that where the trial judge interprets a document solely from the writing itself, the interpretation is a matter of law, and an appellate court is free to give the writing its own interpretation under the applicable principles of law. (*Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825] ; *Zinn* v. *Ex-Cell-O Corp.* (1957) 148 Cal.App.2d 56, 70 [306 P.2d 1017].) The implied finding that the contract itself authorized respondents to commence work on both phases of the project we have shown is not supported by the record, hence the interpretation and the judgment based thereon cannot be sustained.

 Appellant's final contention is that respondents' estimated construction costs of $267,330 for Phase I far exceeds any amount ever authorized by appellant and urges that respondents cannot, therefore, be deemed to have fulfilled their contract. The record contains ample evidence that appellant authorized progressively increased construction costs during the course of the contract. The amount thus involved was clearly a question of fact for the lower court's determination and cannot be disturbed on appeal in view of its adequate support in the evidence. Since respondents thus completed plans of Phase I within the increased costs authorized by appellant, they are therefore entitled to recover the fee provided for by their contract.

In *Martin* v. *McMahan* (1928) 95 Cal.App. 75 [271 P. 114], the court stated, at page 78 : ''While the law is well settled that where the agreement provides for a building not to cost more than a certain sum, the architect is not entitled to compensation under a contract such as was signed by the parties in this case, it also seems to be pretty well settled that if, after the plans are drawn as contemplated by the parties in the first instance, they are so changed by the owners as to increase the cost of the building, the architect is entitled to compensation.''

Our examination of the record discloses no evidence that would support any recovery by respondents on quantum meruit, all of the services being rendered in accordance with the terms of the express contract entered into by the parties.

For the reasons above stated, the judgment is modified by

striking the sum of $1,524.23 from the judgment of $4,370.83 (the amount of the judgment appealed from less 1% of the construction cost of Phase II), leaving a judgment in favor of respondents in the sum of $2,846.60, and as so modified said judgment is affirmed. Appellant to recover costs on appeal.

Kaufman, P. J., and Agee, J., concurred.